UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BIANCA SERRANO,

    Plaintiff,

v.                                          Case: 1:17-cv-24443-DPG

TUITION OPTIONS LLC,

    Defendant.

_____/

**DEFENDANT TUITION OPTIONS LLC'S MOTION TO COMPEL
ARBITRATION AND DISMISS OR STAY CASE AND MEMORANDUM IN SUPPORT**

      Defendant Tuition Options LLC ("Tuition Options"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et. seq., hereby moves this Court to enter an Order: (1) compelling Plaintiff, Bianca Serrano ("Plaintiff or Ms. Serrano"), to pursue her claims in arbitration; and (2) dismissing the Complaint. Plaintiff's claims are premised on a contract (the "Retail Installment Contract") which contained a broad arbitration provision (the "Arbitration Agreement") which provides that Plaintiff would arbitrate the claims she filed with this Court. Therefore, this action should be dismissed in favor of arbitration.

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

      *A.    The Parties' Agreement to Arbitrate.*

      Tuition Options is a lender and servicer of private consumer loans located in Mount Laurel, New Jersey. *See* Declaration of Jason Morgan, attached as Exhibit "A," ¶ 4. Tuition Options delivers customized institutional loan servicing and financing solutions to post-secondary schools nationwide. *Id.* at ¶ 4. Through its compliant online platform, it offers products and services that allow schools to remain focused on providing the best educational experience and value for their

students. *Id.* at ¶ 4. Tuition Options relieves the administrative burden of managing an institutional loan program for schools while providing borrowers with flexible options to finance their education. *Id.* at ¶ 4. Tuition Options serviced Plaintiff's student loan and worked with her to pay off her account in full. *Id.* at ¶ 4. Tuition Options is not a debt collector. *Id.* at ¶ 4.

Plaintiff obtained a student loan with Florida Career College - Miami ("FCC"). *Id.* at ¶ 16. Plaintiff did this by registering with Tuition Options online and creating an online account with a unique username and password. *Id.* at ¶ 16. Then, on September 5, 2013, Plaintiff logged into her online account using her unique username and password to review the loan disclosures, agree to the terms and conditions of the loan, and electronically sign the Retail Installment Contract to obtain the student loan. *Id.* at ¶ ¶ 16 - 18. Plaintiff accepted the terms and conditions related to the loan and electronically signed the Retail Installment Contract on September 5, 2013 at 11:58 a.m. *Id*. The Retail Installment Contract provided for a student loan in the amount of $13,640.88 to pay for tuition at FCC. *See* Retail Installment Contract, attached as Exhibit 2 to Declaration of Jason Morgan, at p. 1. The Retail Installment Contract expressly stated that it was assigned to Tuition Options. *See* Retail Installment Contract, at p. 1.

Prior to agreeing to the terms and conditions of the student loan, and electronically signing the Retail Installment Contract, Plaintiff encountered a screen that provided as follows:

> Do not check this box until you have clicked the link above to view disclosures and your contract.
>
> **I WILL NOT SIGN THIS NOTE BEFORE READING THROUGH IT AND ALL APPLICABLE DISCLOSURES, EVEN IF OTHERWISE ADVISED. WHERE BLANK SPACES EXIST, I HAVE ENTERED MY REQUEST. BY CHECKING THIS BOX, I ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND AND AGREE TO THE TERMS & CONDITIONS OF THIS NOTE AND ALL APPLICABLE DISCLOSURES. I AM ENTITLED TO AN EXACT COPY. I HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE WITHOUT PENALTY. IF MORE THAN ONE PERSON IS SIGNING THIS**

> **NOTE I ACKNOWLEDGE THAT SUCH PERSONS ARE LIABLE JOINTLY AND SEVERALLY FOR ALL OBLIGATIONS TO YOU.**
> . . .
>
> You have the option to submit your Loan with an electronic signature, which expedites the disbursement process. Upon completion of the electronic signature process, you may print a copy of the signed note locally.
>
> You must review your contract and disclosures prior to e-signing. Click the "View Disclosures and Contract for your loan" link above to view your documents. . .

*See* Declaration of Jason Morgan, at ¶ 11.

Through this process, Plaintiff was thus required to review the disclosures and the Retail Installment Contract <u>prior to</u> agreeing to the terms and conditions of the loan, and electronically signing the Retail Installment Contract. *Id.* at ¶ 11. By checking the box and agreeing to electronically sign, Plaintiff acknowledged that she read, understood and agreed to the terms and conditions of the Retail Installment Contract and the disclosures. *Id.* at ¶ 11.

The Retail Installment Contract contains a broad arbitration provision through which Plaintiff agreed to resolve any disputes, claims or controversies (with certain exceptions not relevant here) arising out of or relating to the Retail Installment Contract, the relationship resulting from the Retail Installment Contract, or any activities or services in connection with the contract. *See* Retail Installment Contract, at p. 2. Plaintiff further agreed that any objection to arbitrability or the existence, scope, validity, construction or enforceability of the Arbitration Agreement would be decided by the arbitrator in an arbitration. *See id.* The Retail Installment Contract's Arbitration Agreement specifically provides in relevant part as follows:

> **ARBITRATION AGREEMENT**
> **Any disputes, claims, or controversies between me and School arising out of or relating to: (i) this Agreement; (ii) any relationship resulting from this Agreement, or any activities in connection with the Agreement (including, without limitation, the Application, the disclosures provided or required to be provided in connection with this Agreement, including, without limitation, the Truth-in-Lending Disclosure Statement[s], or the underwriting, servicing or**

> **collection of the amounts financed under this Agreement); (iii) any services related to this Agreement; (iv) any claim, no matter how described, pleaded or styled, relating, in any manner, to any act or omission regarding in any way the obligations of the parties to this Agreement; or (v) any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement, shall be resolved pursuant to this Section (the "Arbitration Agreement").**

*Id.*

The Retail Installment Contract's Arbitration Agreement included any disputes, claims or controversies between Plaintiff and Tuition Options because the definition of "School" in the Arbitration Agreement included Tuition Options, who was the assignee and holder of the Contract:

> **For purposes of this Section, the terms "you", "yours" or "School" means the School, its officers, directors, and employees, and its affiliates, subsidiaries, and parents, and any officers, directors, and employees of such entities, as well as any subsequent assignees or holders of this Agreement.**

*Id.* The Retail Installment Contract expressly provided that it was assigned to Tuition Options. *Id.*, at p. 1.

After electronically signing the Retail Installment Contract, Plaintiff had the right to reject the Arbitration Agreement by mailing a signed rejection notice to Tuition Options within forty-five (45) days of the date that she signed the Retail Installment Contract:

> **RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a signed rejection notice to Tuition Options at PO Box 387, Marlton, NJ 08053 within 45 days of the date that I sign this Agreement. Any rejection notice must include my name, address, e-mail address, telephone number and loan or account number.**

*Id.*, at p. 2.

Disclosure of the Arbitration Agreement and the Right to Reject is prominently featured in the Retail Installment Contract, in bold capital letters, and the language is written in a clear and concise manner. *Id.*, at p. 2. Plaintiff did not send Tuition Options a signed rejection of the Arbitration Agreement within forty-five (45) days of signing the Retail Installment Contract, and

thus, did not reject the Arbitration Agreement. *See* Declaration of Jason Morgan, ¶ 21. Accordingly, the Arbitration Agreement remains a valid and enforceable agreement between the parties.

After Plaintiff electronically signed the Retail Installment Contract, she received the student loan to attend FCC. *See* Declaration of Jason Morgan, ¶ 22. Plaintiff thus accepted the terms of the Retail Installment Contract. Indeed, Plaintiff made intermittent payments to Tuition Options under the Retail Installment Contract from November 19, 2013 through December 5, 2016. *Id.* at ¶ 22.

### B.   *Plaintiff's Complaint Against Tuition Options.*

More than a year after Plaintiff paid off her student loan, Plaintiff filed this action asserting that Tuition Options robocalled her more than 100 times[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ("TCPA") (Count I), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") (Count II), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et. seq. ("FCCPA") (Count III), and common law claims for violating her privacy (Count IV). [D.E. 1].

There can be no argument that the subject of this lawsuit is not within the scope of the Retail Installment Contract and its Arbitration Agreement. Plaintiff expressly consented to the use of automated telephone dialing equipment or an artificial or pre-recorded voice message contacting her by telephone in connection with the loan or loan application and provided a telephone number on the Retail Installment Contract:

> I/We also consent to the use of automated telephone dialing equipment or an artificial or pre-recorded voice message to contact me/us in connection with this loan or loan application. You may contact me/us at any telephone number provided

---

[1] Tuition Options vigorously contests Plaintiff's factual allegations and the merits of Plaintiff's claims.

> in this retail installment contract, credit application, or in other documents, even if any such number is a cellular telephone number.
>
> . . . .
>
> **To the extent permitted by applicable law, and without limiting any other rights you may have, I expressly consent to your communicating with me, in connection with my Application or my Loan, using any phone number or e-mail address that I provided in the Application, or using any phone number or e-mail address that I provide in the future or using any phone number or e-mail address that the persons listed in my Application as references provided to you or provide you in the future. I expressly consent for you to communicate with me using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, e-mail directed to me at a mobile telephone service, or e-mail otherwise directed to me. YOU MAY USE SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, E-MAILS OR OTHER MEANS. "You" and "your" for purposes of this Paragraph, and the express consent contained herein also includes/extends to any servicer of my Loan.**

*See* Retail Installment Contract, at pp. 1 and 2.

Moreover, Plaintiff acknowledged in the Retail Installment Contract that because she agreed to arbitrate that she waived the right to file this action in court, but did so despite this waiver:

> **IMPORTANT WAIVERS: IF EITHER YOU OR I CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL, TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED IN THE APPLICABLE RULES, OR OTHERWISE TO LITIGATE THE DISPUTE OR CLAIM IN ANY COURT (OTHER THAN IN AN ACTION TO ENFORCE THE ARBITRATORS AWARD) . . . THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING.**

*See* Retail Installment Contract, at p. 3.

While it is clear that the above provisions establish that Plaintiff's claims have no merit, the Court should recognize that the subject matter is covered by the Retail Installment Contract and its Arbitration Agreement, and compel arbitration.

## II.  THE COMPLAINT IS SUBJECT TO BINDING ARBITRATION.

### A.  *Plaintiff's Claim Are Subject to Arbitration Pursuant to the FAA.*

In this case, there can be no dispute that the Federal Arbitration Act ("FAA") applies to the Arbitration Agreement in the Retail Installment Contract. The express language of the Arbitration Agreement in the Retail Installment Contract provides that the FAA applies to the enforcement of the Arbitration Agreement and the arbitrability of claims between the parties:

> **Choice of Law – The arbitrator shall apply federal law to the fullest extent possible, and the substantive and procedural provisions of the Federal Arbitration Act (9 U.S. C. §§ 1 – 16), and not any state law, shall govern this Arbitration Agreement and any and all issues relating to the enforcement of the Arbitration Agreement and the arbitrability of claims between the parties.**

*See* Retail Installment Contract, at p. 2.

Even in the absence of an express provision such as this, the FAA is applicable because the Retail Installment Contract between the parties and the servicing, handling, and collection of the tuition loan implicate interstate commerce with the meaning of the FAA. *See Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874-75 (11th Cir. 2005) (finding the "FAA's broad interstate commerce requirement" was satisfied when lending transactions took place between a Georgia resident and a national bank located in South Dakota and that the bank's role in analyzing loan applications, sending the approved loan applications, funding the loans, and accepting the loan proceeds constitutes sufficient interstate commerce under the FAA).

Also, the FAA governs the Retail Installment Contract because the parties conducted their business across state lines. *Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1146 (11th Cir. 2015) ("The FAA governs the Loan Agreement because the parties conducted their business across state lines). Plaintiff is a resident of Florida, and Tuition Options is Delaware limited liability company with

its principal place of business in Mount Laurel, New Jersey. Tuition Options handles, services, and collects loans from New Jersey, including Plaintiff's tuition loan. From the State of Florida, Plaintiff used the internet to contact Tuition Options to contract with them. Consequently, the transactions between Plaintiff and Tuition Options indisputably flowed through interstate commerce in such a manner as to involve commerce within the meaning of the FAA. *See* 9 U.S.C. § 2. As a result, the FAA applies to require enforcement of the Retail Installment Contract's Arbitration Agreement.

The FAA explicitly states that arbitration agreements, like the one agreed to by Plaintiff, are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Where a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," that party "may petition any United States district court. . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.,* 544 F.3d 1192, 1195 (11th Cir. 2008); *see also Lamour v. Uber Technologies, Inc.*, 1:16-cv-21449-MARTINEZ/GOODMAN, 2017 WL 878712, *5 (S.D. Fla. March 1, 2017).

In this case, the Retail Installment Contract's Arbitration Agreement contains a delegation clause requiring the existence, scope, validity, construction and enforceability of the agreement be resolved by an arbitrator. Where the arbitration provision contains a valid delegation clause, it divests the Court of the authority to determine the arbitration provision's validity or enforceability. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010); *Bodine v. Cook's Pest Control, Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016); *Cashcall, Inc.*, 804 F.3d at 1147-48. Here, a

valid delegation clause existed in the Arbitration Agreement between the parties, and thus, this Court must treat the delegation provision as valid pursuant to Section 2 of the FAA, and compel arbitration pursuant to Section 3 and 4 of the FAA.

> **B.     *This Court Should Compel Arbitration Because the Arbitration Agreement Between the Parties Contains a Valid and Enforceable Delegation Provision.***

As noted *supra*, Plaintiff entered into a valid and enforceable Arbitration Agreement under which Tuition Options has rights. The Arbitration Agreement contained a broad arbitration provision which included a delegation provision:

> **Any disputes, claims, or controversies between me and School arising out of or relating to. . . (v) any objection to arbitrability or the existence, scope, validity, construction, or enforcement of this Arbitration Agreement, shall be resolved pursuant to this Section (the "Arbitration Agreement").**

*See* Retail Installment Contract, p. 2.

"[T]he parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing to *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 – 69 (2010)). Indeed, an agreement to arbitrate these gateway issues 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Jones*, 866 F.3d 1264 (citing to *Rent-A-Center, W., Inc.*, 561 U.S. at 70). Thus, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about <u>that</u> matter." *Jones*, 866 F.3d at 1264 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). An antecedent agreement of this kind is typically referred to as a

"delegation provision." *Jones*, 866 F.3d at 1265 (citing to *Rent-A-Center, W., Inc.*, 561 U.S. at 68). The Supreme Court has upheld delegation provisions as valid. *See Parnell*, 804 F.3d at 1146.

To determine whether the parties have manifested a clear and unmistakable intent to arbitrate gateway issues, courts look to the wording of the delegation provision itself. *Jones*, 866 F.3d at 1267. The language in the delegation provision in this case clearly and unmistakably evinces the parties' intent to submit to arbitration the threshold issue of arbitrability. The provision requires arbitration of "any, disputes, claims or controversies" relating to any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement," and the courts have said "[a]ny disputes means all disputes, because 'any' means all." *Jones*, 866 F.3d at 1267 (citing to *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003)) (quotations omitted); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting *Webster's Third New International Dictionary* 97 (1976)).

The language in the Arbitration Agreement is also strikingly similar to the language in *Jones*, *Parnell*, and *Martinez*, where the Eleventh Circuit has previously found to evince the requisite intent. *See Jones,* 866 F.3d at 1267 – 1268 (finding requisite intent where delegation provision stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable"); *Parnell*, 804 F.3d at 1148 (finding requisite intent where delegation provision submitted to arbitration "any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement"); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245

(11th Cir. 2014) (finding requisite intent where delegation provision submitted to arbitration "any question regarding [the agreement's] existence, validity, or termination").

In fact, another court in Florida has found that Plaintiff's statutory claims are likewise subject to the delegation provisions. The unpublished order in *Harrington v. Regions Bank*, Case No. 2:15-cv-533-Ftm-29MRM (M.D. Fla. Jan. 29, 2016) [D.E. 18] is instructive.[2] There, the plaintiff disputed the defendant's assertion that the plaintiff's claim under the TCPA was subject to the delegation clauses in the arbitration provisions vesting the determination of the arbitrability of a claim or dispute with the arbitrator, not the Court. *Harrington*, slip op. at 1-3. The district court held that the delegation provisions clearly and unmistakably delegate the determination of arbitrability to the arbitrator. *Id.* Pursuant to the delegation clauses contained within the arbitration provisions, the district court submitted the determination of whether or not the TCPA claim is subject to the arbitration agreement to the arbitrator. *See id.*

Similarly, this Court should compel arbitration of Plaintiff's claims because the parties clearly and unambiguously intended to delegate to the arbitrator all threshold issues of arbitrability, including but not limited to, issues concerning objections to arbitrability, and the existence, scope, validity, construction or enforceability of the Arbitration Agreement at issue.[3]

---

[2] A copy of Harrington is attached as Exhibit "B."

[3] Even if the parties had not expressly delegated the issue of arbitrability to the arbitrator, it is clear that Plaintiff's claims are subject to the arbitration. *See Vanwechel v. Regions Bank*, Case No. 8:17-cv-738-T-23AAs slip op. (M.D. Fla. May 3, 2017) [D.E. 11], attached as Exhibit "C."

In *Vanwechel*, the plaintiffs sued the defendants for the same claims at issue here -- violations of the TCPA, the FDCPA and the FCCPA. In arguing against arbitration, the plaintiffs argued that their claims were "separate and independent from" their agreement to arbitrate. *Vanwechel*, slip op. at 3. The District Court rejected this argument, finding that the Vanwechels agreed to arbitrate "any" claim "relating to" "the collection of any amounts due under" the agreement and the TCPA, FCCPA, and FDCPA claims "relate" directly to the collection of money owed under the agreement. *Id.*

Similarly, the Arbitration Agreement is broad enough to include Plaintiff's claims for violations of the TCPA, FCCPA, FDCPA, and invasion of privacy because Plaintiff agreed to

**III. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO THE ARBITRATION CLAUSE.**

The FAA "leaves no place for the existence of discretion" by a trial court, but instead mandates that trial courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985). When a party to an arbitration agreement elects to file a lawsuit rather than pursue arbitration, that party has refused to arbitrate, and a district court may compel arbitration. 9 U.S.C. § 4. But when, as here, all of a plaintiff's claims are subject to arbitration, the court should go further and dismiss the complaint with prejudice pursuant to 9 U.S.C. § 3 and Rule 12(b)(6) for failure to state a claim. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F. 2d 1161, 1164 (5th Cir. 1992). The Eleventh Circuit thus has held that "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration" when the claims are all subject to mandatory arbitration. *Lambert v. Austin Indus.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (emphasis added). The Eleventh Circuit has also affirmed dismissal on those grounds. *See Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005).[4] Respectfully, Tuition Options submits that dismissal pursuant to the Arbitration Clause is the proper course in this case.

---

arbitrate any dispute, claims, or controversies relating to the servicing or collection of the amounts financed under the Retail Installment Contract. Even without resort to the delegation provision, this Court should find Plaintiff's claims subject to arbitration.

[4] "The Eleventh Circuit, at one point, suggested only a stay of litigation is appropriate. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992). However, more recently, the Circuit affirmed dismissal when all claims were subject to arbitration [citing *Caley*]." *Perera v. H & R Block E. Enters, Inc.*, 914 F. Supp. 2d 1284, 1289-90 (S.D. Fla. 2012). More recently, other district courts have dismissed, rather than merely stayed, claims subject to arbitration. *See Kivisto v. National Football League Players Association*, No. 10-24226-CIV, 2011 WL 335420, at *2 (S.D. Fla. Jan. 31, 2011), *aff'd*, 435 F. App'x 811 (11th Cir. 2011)*; Athon v. Direct Merchants. Bank*,

IV. **CONCLUSION**

WHEREFORE, Tuition Options, LLC respectfully requests this Honorable Court enter an Order: (1) compelling Plaintiff, Bianca Serrano, to bring her claims in arbitration pursuant to the terms of the Arbitration Agreement in the Retail Installment Contract; (2) dismissing all Court proceedings and deadlines while this matter proceeds in arbitration; (3) awarding Tuition Options, LLC its attorneys' fees and costs pursuant to the Retail Installment Contract or any federal or Florida statutes; and (5) awarding Tuition Options, LLC any other relief this Court deems just and proper.

Respectfully submitted,

TACHE, BRONIS, CHRISTIANSON & DESCALZO, P.A.
150 S.E. 2nd Avenue
Suite 600
Miami, Florida 33131
Tel. 305.537.9565
Fax 305.537.9567

By: */s/ Marissel Descalzo*
    Walter J. Tache, Esquire
    Florida Bar No. 28850
    wtache@tachebronis.com
    service@tachebronis.com
    Marissel Descalzo, Esquire
    Florida Bar No. 669318
    mdescalzo@tachebronis.com
    service@tachebronis.com
    Ivonne Barroso, Esquire
    Florida Bar No. 0587761
    ibarroso@tachebronis.com
    service@tachebronis.com
    *Counsel for Tuition Options LLC*

---

No. 5:06-CV-1, 2007 WL 1100477, at * 6 (M.D. Ga. Apr. 11, 2007); *Samadi v. MBNA Am. Bank, N.A.*, No. CV 104-137, 2005 WL 6111467, at * 4 (S.D. Ga. June 10, 2005); *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/*Marissel Descalzo*_____

## SERVICE LIST

**Bianca Serrano v. Tuition Options, LLC**
**United States District Court for the Southern District of Florida**
**Case: 1:17-cv-24443-DPG**

Amanda J. Allen, Esquire
Amanda@TheConsumerProtectionFirm.com
William "Billy" Peerce Howard, Esquire
billy@theconsumerprotectionfirm.com
The Consumer Protection Firm
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: 813.500.1500
Facsimile:813.435.2369
*Counsel for Plaintiff Bianca Serrano*